UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| DENNIS ANTONIOUS and PEGGY ANTONIOUS | : | |
| Debtors | : | Bankruptcy No. 05-18809 |
| _____ | | |
| BRYON STEVENS and MAYOLIA STEVENS, | : | |
| Plaintiffs | : | |
| v. | : | |
| DENNIS ANTONIOUS and PEGGY ANTONIOUS | : | |
| Defendants | : | Adversary No. 05-575 |
| _____ | | |

.................................................

OPINION

.................................................

        In the above-captioned adversary proceeding, the plaintiffs Bryon Stevens

and Mayolia Stevens assert that the defendants—joint chapter 7 debtors Dennis

Antonious and Peggy Antonious—owe them a non-dischargeable debt pursuant to 11

U.S.C. §523(a)(2) and (a)(6).[1]  The defendants maintain that any debt owed is

dischargeable.

_____

[1]In their complaint, the plaintiffs also sought relief under 11 U.S.C. § 523(a)(4).  In the
joint pretrial statement, however, they elected to proceed at trial only under sections 523(a)(2)
and (a)(6).

As will be discussed, the plaintiffs contend that debtors obtained substantial

funds from the plaintiffs through fraud, misrepresentations, false pretenses, and willful

and malicious conduct in connection with a home repair project.  The debtors counter that

Mrs. Antonious had no dealings with the plaintiffs and no connection with this project,

while Mr. Antonious acted solely as a referral agent who bore no responsibility for the

actions or representations of the actual home construction contractor.

Before considering the evidence presented, I note that this case has been

classified by the chapter 7 trustee as a no-asset case, meaning that the trustee could find

no non-exempt property for distribution to creditors.  The trustee's report to this effect

was filed on January 31, 2006.  In general, in a no-asset chapter 7 case the amount of any

creditor's claim need not be fixed, because the amount is not material to the

administration of the bankruptcy case.  Indeed, creditors have been instructed that they

should not file proofs of claim as the bankruptcy trustee does not intend to make

distributions to creditors.  Fed. R. Bankr. P. 2002(e), 3002(c)(5).

A bankruptcy court does have the power, even in a no-asset case, to fix a

claim in connection with non-dischargeability litigation, and in appropriate circumstances

may elect to do so.  See, e.g., In re McLaren, 3 F.3d 958, 965-66 (6th Cir. 1993); Matter

of Hallahan, 936 F.2d 1496, 1507-08 (7th Cir. 1991).  I need not decide whether such

circumstances exist in this instance.  The parties have expressly agreed at trial that I

should not determine the amount of the debt, if any, owed by the defendants.  Rather, to

the extent the obligation is nondischargeable, the defendants' liability will be fixed by

state court, in litigation now pending in that forum (albeit stayed by the debtors'

bankruptcy filing).  Conversely, if any debt owed by the debtors would be dischargeable,

the plaintiffs would be enjoined by 11 U.S.C. § 524(a) from proceeding with their state

court litigation.[2]

Given that understanding, I shall simply focus on the issue of

nondischargeability.


I.


After a one day trial that took place on October 20, 2006, and upon

consideration of all the testimony and exhibits offered in evidence, as well as upon the

parties' joint statement of uncontested facts, I make the following factual findings:[3]

1. The chapter 7 debtors in these proceedings are Mr. Dennis Antonious,

a/k/a Denny Antonious, and Mrs. Peggy Antonious, husband and wife, residing at 124

Hedgerow Lane, West Chester, PA 19380.  Statement of Uncontested Facts, #1.

---

[2]As no party in interest objected to the entry of a chapter 7 discharge, such a discharge
was entered on March 14, 2006.

[3]Reference to the Notes of Testimony ("N.T.") shall include the precise time of day that
the testimony was given on October 20th, as noted on the audio disc.  No party ordered a
transcript of the trial.

2.  Plaintiffs are Mr. Bryon[4] Stevens and Mrs. Mayolia Stevens, husband and wife, residing at 419 Harry Road, Coatesville, PA 19320.  Statement of Uncontested Facts, #3.

3.  In November 2003, the plaintiffs decided to finance an addition to their residence.  They saw an advertisement placed by Mr. Antonious and telephoned the number listed in the advertisement.  Statement of Uncontested Facts, #4; N.T. at 9:40, 9:43.

4. The advertisement seen by the plaintiffs and placed by Mr. Antonious advertises his business as "Your Small Job Specialist(s)."  N.T. at 9:40.  Mr. Antonious also advertises his business as "A Small and Large Job Specialist" and "A Small Job Specialist."  Statement of Uncontested Facts, #8.  The telephone number listed on the advertisement is Mr. Antonious' business telephone number.  Id.

5.  Mr. Antonious' business is located in the basement of his residence, and this residence is solely owned by Mrs. Antonious.  Statement of Uncontested Facts, ##6, 10; N.T. at 10:41.  The business telephone number, 610-695-9840, is different from the telephone number used by Mrs. Antonious and their children.  Statement of Uncontested Facts, #8; N.T. at 10:21.

6.  The parties agreed as follows: "Dennis Antonious holds himself and his

---

[4]The pleadings refer to Mr. Stevens' first name as "Byron."  At trial, however, Mr. Stevens testified, and his counsel indicated, that his first name actually is "Bryon" and that all references to "Byron" were typographical errors.  N.T. 9:38-39.

business out to the public as a general contractor engaged in the business of home repairs

and construction of additions and related jobs, and he conducts this business from his

wife's . . . home."  Statement of Uncontested Facts, #10.

7.  After initially communicating with Mr. Antonious, Mr. and Mrs. Stevens

received a written brochure from him promoting an entity called "Your Small Job

Specialists" and listing more than 40 different types of work performed.  Ex. P-2.

Included within this brochure are the following statements:

> a. "With over 47 men to do all the basic
> disciplines–Carpentry, Plumbing, Electrical, HVAC, Drywall,
> Painting, Masonry, Handyman, etc."
>
> b. "We also do all phases of Tree Work and small to large
> scale Landscape projects."
>
> c. "37 Years in Business~Licensed & Insured"
>
> d. "All checks are to be made out to Denny Antonious.  There
> are no exceptions unless you hear differently from Denny
> Antonious.  Once our tradesmen have reviewed the work to
> be done at your home with you he [sic] then will write up a
> proposal for your approval. . . .  All proposals and monies
> may be given to the tradesmen and will be delivered to the
> office.  Should you have any questions in regard to the above
> kindly contact me at 610-695-9840."

8. Throughout the brochure is the name of the entity "Your Small Job

Specialist," and the telephone number 610-695-9840.  The address of this entity listed in

the brochure is "1316 West Chester Pike, Suite 113, West Chester, Pennsylvania."  Ex. P-

2.  As this address is neither the Antonious residence nor the business address of Mr. John

5

Griffith (to be discussed below), it is probable that Mr. Antonious simply picked up mail addressed to Your Small Job Specialist at the West Chester Pike address.

9.   It is also likely that Mr. Antonious used an address with a suite number for "Your Small Job Specialists," rather than his home address, to give the impression that the entity was a substantial company.

10.   Mr. Antonious acknowledged that "Your Small Job Specialists" (and the variants mentioned above) is a fictitious name he uses in conducting his business. N.T. at 10:45.  It is not a corporation, nor a partnership, and it has no employees.  N.T. at 10:40-41.

11.   Moreover, "Your Small Job Specialists" does not actually perform any of the work listed in its brochure.  N.T. at 10:44-45.  Mr. Antonious is not licensed as an engineer or architect.  N.T. at 10:43.  He has not done any construction work for seven or eight years.  N.T. at 10:44.   He basically functions as a referral agent.  N.T. 11:00; 11:02. Upon Your Small Job Specialists receiving an inquiry or request for service from a homeowner, Mr. Antonious communicates with one or more contractors known to him that he believes is appropriate for the proposed job, and has that contractor visit the homeowner and tender a contractual proposal.  If the homeowner and the contractor sent by Mr. Antonious enter into an agreement for work on the proposed project, Mr. Antonious is paid by the contractor a portion of the contract price as a finder's fee.  N.T. 11:00, 11:02.

6

12.   Mr. Antonious testified that he informed the Stevenses prior to the signing of any contracts that he acted solely as a referral agent.  N.T. at 11:54, 12:02.  Mrs. Stevens denied this and testified that she believed that Mr. Antonious and his company would be performing all work done, not some third party.  N.T. at 12:14.  Mr. Stevens testified that had he known about the true nature of Dennis Antonious' business, he would not have hired "Your Small Job Specialists" to construct the addition to his home.  N.T. 9:53. The Stevenses' testimony is more credible.  As will be discussed, all payment checks tendered on the project were made payable to Mr. Antonious.  The contract signed by Mr. Stevens referred to the entity "Your Small Job Specialists."  And when problems developed with the contracting work, the Stevenses communicated with Mr. Antonious.  Furthermore, the defendants stipulated that Mr. Antonious holds himself out to the public as a general contractor, not as a referral agent.

13.   After speaking with the Stevenses, Mr. Antonious referred Mr. John Griffith to meet with Mr. and Mrs. Stevens to propose a contract for the home improvement work they sought.  N.T. at 11:05.  Mr. Griffith met with Mr. and Mrs. Stevens at their home.  N.T. at 11:05.  Neither Mr. nor Mrs. Antonious ever met with Mr. or Mrs. Stevens.  N.T. at 10:18, 11:03.

14.   After meeting with Mr. Griffith, Mr. Stevens ultimately entered into one or more contracts dated November 14, 2003, November 21, 2003, and July 12, 2004.  Ex. P-3.  Each of these contracts refers to "Your Small Job Specialists," using the West

Chester Pike address, but with a different telephone number than mentioned in the brochure.  Each of the contracts states: "Make all checks payable to Denny Antonious."  Ex. P-3.  The documents offered into evidence contain signatures on the July 12 contract of Mr. Stevens and of John Griffith, signing as "Your Small Job Specialist."  Ex. P-3.  The two other contracts contain the signature of "John Griffith Your Small Job Specialist".  Ex. P-3.

       15.  Mr. Antonious testified that he had not seen the contracts before the commencement of the Stevenses' state court action against him, N.T. 11:30-31, and that these contracts involved only John Griffith and Mr. Griffith's company—a company that Mr. Antonious claimed Mr. Griffith sometimes referred to as "Your Small Job Specialists," and not Mr. Antonious' fictitious "Your Small Job Specialists" entity.  N.T. 11:57.  This testimony is not credible.  The contracts referred to the same name as the entity in the brochure sent to the Stevenses by Mr. Antonious, as well as the same mailing address; the contracts specified that all payments should be made out to Denny Antonious; and John Griffith signed the contract as "Your Small Job Specialist."  Ex. P-3.

       16.  I find it unlikely that a wholly unaffiliated entity of the same name would use Dennis Antonious' mailing address and specify that he must receive all payments.  Moreover, when Mr. Griffith applied to the local township for a building permit, he submitted design drawings identifying his company as "ITP Renovations, Inc.," located at 407 Sheffield Drive, and not "Your Small Job Specialists."  Ex. D-1.

8

17. Mrs. Stevens credibly testified that at no time during the construction of the addition onto her home had either Mr. Antonious or Mr. Griffith mentioned a separate company, such as ITP Renovations. N.T. 12:14. Mrs. Stevens further testified that she had not see the building permit or plans before the death of John Griffith; indeed Mrs. Stevens credibly testified that the day of trial was the first time she had seen the permit and plans. N.T. 12:14.

18. I further find that the brochure sent by Mr. Antonious was intended to give the false impression that "Your Small Job Specialists" was a large company with numerous employees and equipment, capable of completing all home construction projects, large and small. The contracts proposed to Mr. Stevens were designed to further the false impression that this entity was performing the construction work.

19. Based in whole or in part on this false impression, and believing the statements about Your Small Job Specialists made in the advertising brochure, Mr. Stevens entered into one or more home construction contracts. N. T. at 9:42-43, 9:48. The final contract price was $83,500. Ex. P-3.

20. Construction on plaintiffs' new addition began in May of 2004. Uncontested Statement of Facts, #11. Portions of plaintiffs' home were removed and a foundation for the addition was poured. Statement of Uncontested Facts, #12. The foundation for the addition was not constructed to the correct size. Thereafter, "removal of the improper foundation was begun, but not finished." Statement of Uncontested

Facts, #13.  In addition, walls for the addition were framed incorrectly.  N.T. at 9:48-49.

The Stevenses' residence also suffered water damage due to the faulty construction.  N.T.

at 9:49.

21.  Plaintiffs paid a total of $53,800 toward the contract price for

construction of the new addition to their home.  Ex. P-4.  This payment was made in two

installments, by personal checks made payable to Denny Antonious.  Id.  The first check,

No. 666, was dated November 16, 2003 and was for $8,800.  Id.  The second check, No.

673, was dated November 23, 2003 and was for $45,000.  Id.

22.  Neither Mr. Antonious nor his fictitious entity have a bank account.

Statement of Uncontested Facts, #7.   The Internal Revenue Service contends that Mr.

Antonious owes back taxes and has made efforts to collect its debt.  N.T. at 10:47.

Fearing that the IRS would garnish his bank account, Mr. Antonious uses Mrs.

Antonious' personal bank account for all of his business transactions and has done so for

a number of years.  Statement of Uncontested Facts, #7.  In order to use this account, Mr.

Antonious, with his wife's consent, has access to a stamp reflecting a copy of Mrs.

Antonious' signature.  N.T. at 10:12-13.  He uses this stamp to endorse checks made

payable to him in connection with Your Small Job Specialists.  N.T. 10:12-13.

23.  Check No. 673 for $45,000 was endorsed by Mr. Antonious, signing

his name and stamping his wife's name, and was deposited into Mrs. Antonious' personal

bank account.  Ex. P-4; N.T. 11:35.  Check No. 666 for $8,800, although made payable

10

to "Denny Antonious," was cashed by John Griffith at "Mailing Services Plus," a check

cashing facility no longer in business.  Ex. P-4; N.T. 11:35.   Unless Mr. Antonious saw

copies of the signed contracts, Ex. P-3, he may have had no knowledge of the initial

$8,800 payment until the state court action against him had commenced.  N.T. 10:48,

11:35.

      24.  Mr. Antonious transferred $44,500 of the $45,000 paid by Mr. Stevens

to Mr. Griffith.  N.T. at 10:49.  He anticipated receiving additional funds from Mr.

Griffith as a referral fee at the conclusion of the construction project.  N.T. at 11:32-33.

      25.  Mr. Griffith began construction work at the Stevenses' residence,

which work went poorly, as described above.  Mr. Griffith then died and the work ceased

in August 2004.  N.T. at 9:56-57.  The construction project was never completed; nor

were the problems with the work completely corrected.  N.T. at 9:49.

      26.  Mr. Stevens called Mr. Antonious and complained about the quality of

the work, its delays and its incompleteness, ultimately demanding repayment of all funds

paid.  N.T. at 9:49.  Mr. Antonious refused repayment, blaming Mr. Griffith and his

death, and disclaiming responsibility for the construction project.  N.T. at 9:49, 11:37.

Furthermore, Mr. Antonious informed Mr. Stevens that he would need to make further

payments to have the job corrected and completed.  N.T. at 11:38-39.

      27.  In February 2005, Mr. and Mrs. Stevens filed a complaint in state court

against Mr. and Mrs. Antonious, and against Your Small Job Specialists, demanding

repayment of the amount paid plus other damages.  Ex. P-5.   That lawsuit was stayed by

the defendants' bankruptcy filing.

28.   Mrs. Antonious has solely owned the family residence for

approximately 18 years.  Statement of Uncontested Facts, #6.  All furnishings in the

house are also the sole property of Mrs. Antonious.  Id.

29.   The parties agree that Mrs. Antonious never met with Bryon or Mayolia

Stevens, nor has she ever communicated with them verbally or in writing.  Statement of

Uncontested Facts, ##14, 15, 18, 19.

30.   The plaintiffs have stipulated that "Peggy Antonious has never made

any representations or misrepresentations to Byron [sic] Stevens in any form whatsoever."

Statement of Uncontested Facts, #21.[5]  They offer the same stipulation regarding Mrs.

Antonious making no representations or misrepresentations to Mrs. Stevens.  Statement

of Uncontested Facts, #17.

31.   Mrs. Antonious resides in the upstairs portion of the family home,

while Mr.  Antonious lives and works in the basement.  N.T. 10:19.  This arrangement

has existed for a period of at least 15 years.  N.T. 10:19.  Mrs. Antonious communicates

with her husband about matters concerning their three children, and does not visit his

basement office nor discuss his business affairs.  N.T. 10:17, 10:19, 11:43.

---

[5]A typographical error most likely exists in the joint pre-trial statement regarding the
labeling of fact number 21 as 16.  For purposes of this opinion, I will assume that number 21 was
intended and that number 16, because it had already been used, was an unintentional error.

12

32.  Mr. Antonious controls the family finances and Mrs. Antonious has no knowledge of deposits and withdrawals from her bank account. N.T. 10:21, 10:57.

33.  On one occasion, Mrs. Antonious wrote a business letter for her husband, probably dictated by him.  Ex. P-1; N.T. 10:24.  She wrote this letter because her husband's computer was not working and his penmanship is poor.  N.T. at 10:24-25.

34. This letter, Ex. P-1, is dated November 11, 2003, has the letterhead of "Your Small Job Specialists" and is addressed to Mr. Scott Allison in Chester Springs. Although it does not involve the Stevenses' home construction project, it is contemporaneous with that project, as the first check issued by Mr. Stevens to Mr. Antonious was dated November 16, 2003.  Ex. P-4.  The letter implicitly responds to complaints made regarding the construction of a fireplace in Mr. Allison's home.  Ex. P-1.  The letter also states in part:

> I think it would be best for you to deal directly with Karl
> Fisher to finish your fireplace project.  Karl will send you his
> own contract for you to sign. The price will remain the same
> as the original one signed with me.  The monies due on this
> contract will be paid directly to Karl Fisher.

35.  This letter supports the finding that the contract signed by Mr. Stevens and Mr. Griffith on behalf of Your Small Job Specialists was not Mr. Griffith's contract; instead it was Mr. Antonious' contract.

36.  Mr. Antonious disclosed eight lawsuits filed or pending against him by dissatisfied customers within one year of his bankruptcy filing.  Statement of Financial

Affairs, #4.  Four lawsuits resulted in judgments entered against him (including one held

by Mr. Allison), three were pending (including the lawsuit filed by the Stevenses), and

one lawsuit was withdrawn.  Id.

II.

I make the following legal conclusions:

1.  The plaintiffs met their evidentiary burden to prove that any debt owed

by Mr. Dennis Antonious to Mr. Bryon and/or Mrs. Mayolia Stevens is nondischargeable

pursuant to 11 U.S.C. § 523(a)(2)(A), because he obtained money by making false

representations and using false pretenses.

2.  The plaintiffs did not meet their evidentiary burden to prove that any

debt owed to them by Mrs. Peggy Antonious should be nondischargeable under section

523(a)(2)(A).

3  The plaintiffs did not meet their evidentiary burden to demonstrate that

either defendant acted willfully and maliciously, such that plaintiffs' debt would be non-

dischargeable under 11 U.S.C. § 523(a)(6).

14

III.

When a creditor seeks a determination that he holds a

nondischargeable debt under 11 U.S.C. § 523(a), he bears the burden of demonstrating

nondischargeability by a preponderance of the evidence.  See, e.g., Grogan v. Garner, 498

U.S. 279, 291 (1991); In re Graham, 973 F.2d 1089, 1101 (3d Cir. 1992).  Generally, the

provisions of section 523(a) are, as a matter of policy, "strictly construed against creditors

and liberally construed in favor of debtors" because of the overriding bankruptcy purpose

of granting debtors a fresh start.  In re Lee, 2000 WL 815928, at *2 (Bankr. E.D. Pa.

2000) (quoting In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995)); see also In re Perkins,

2000 WL 1010580, at *3 (Bankr. E.D. Pa. 2000); In re Chryst, 177 B.R. 486, 493 (Bankr.

E.D. Pa. 1994).

The plaintiffs argue primarily that their claim against both debtors is

nondischargeable under section 523(a)(2)(A) because they were induced by false

pretenses and misrepresentations to hire Your Small Job Specialists.  Not only did that

entity not provide competent workers, but it was unable to address the problems and

complete the home construction project because, unbeknownst to the Stevenses, the entity

consisted solely of Mr. Antonious, who does not perform such construction work.

Section 523(a) states that

[a] discharge under section 727 . . . does not discharge an
individual debtor from any debt—

15

(2) for money, property services, or an extension, renewal or
refinancing of credit, to the extent obtained, by—
    (A) false pretenses, a false representation, or
    actual fraud, other than a statement respecting
    the debtor's or an insider's financial condition;

See generally Field v. Mans, 516 U.S. 59 (1995); In re Brady, 243 B.R. 253, 258 (E.D.

Pa. 2000); In re Lee, 2000 WL 815928, at *2.

    To successfully challenge the dischargeability of debt under section

523(a)(2)(A), the creditor must establish that: (1) the debtor made the representations

knowing they were false; (2) the debtor made the representations with the intent and

purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false

representations; and (4) the creditor suffered a loss or damage as a proximate

consequence of the representation having been made.  See, e.g., Field v. Mans, 516 U.S.

59, 61 (1995); In re Ophaug, 827 F.2d 340, 342 n.1 (8th Cir. 1987); In re Maurer, 112

B.R. 710, 712-13 (Bankr. E.D. Pa. 1990).  In general, this test applies for all three

grounds listed in section 523(a)(2)(A) even though the elements for each vary slightly.

Thus, a showing of justifiable reliance and causation of loss must be made in order to

recover under any component of section 523(a)(2)(A).  See In re Ali, 321 B.R. 685, 690

(Bankr. W.D. Pa. 2005).

    To prove fraud or misrepresentation by a contractor, the creditor may

establish that the debtor entered into the contract with the intent of never complying with

the terms. Compare Maurer, 112 B.R. at 713 (finding no fraud because the creditor failed

16

to prove that the debtor never intended to complete the work), and In re Edmund, 5 B.R.

172, 175 (Bankr. W.D. Okla. 1980) (finding no evidence that the debtor accepted the

payments with an intention to breach the contract), with In re Fenninger, 49 B.R. 307, 308

(Bankr. E.D Pa. 1985) (finding evidence of fraud because the debtor never intended to do

work under the contract).  A mere breach of the construction contract alone does not

establish fraud or misrepresentation for purposes of  section 523(a)(2)(A).  Maurer, 112

B.R. at 713.

In addition to demonstrating an intent not to comply, a creditor may also

establish the failure of a contractor to disclose or misrepresent a material fact as

constituting fraud or misrepresentation under section 523(a)(2)(A).  See In re Docteroff,

133 F.3d 210, 216-217 (3d Cir. 1997).  Bankruptcy courts have "overwhelmingly held

that a debtor's silence regarding a material fact can constitute a false representation . . . ."

In re Van Horne, 823 F.2d 1285, 1288 (8th Cir. 1987), abrogated on other grounds by

Grogan v. Garner, 498 U.S. 279 (1991).

Furthermore, a "false pretense" is an "implied misrepresentation or conduct

which creates and fosters a false impression, as distinguished from a 'false representation'

which is an express misrepresentation."  In re Haining, 119 B.R. 460, 463-464 (Bankr. D.

Del. 1990); see, e.g., In re Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005); In re

Philopulos, 313 B.R. 271, 281 (Bankr. N.D. Ill. 2004).  It has also been defined as any

series of events, when considered collectively, that create a contrived and misleading

understanding of a transaction, in which a creditor is wrongly induced to extend money or

property to the debtor.  See, e.g., In re Barr, 194 B.R. 1009, 1019 (Bankr. N.D. Ill. 1996).

A false pretense must be fostered "willfully, knowingly, and by design; it is not the result

of inadvertence." Id.

Courts have determined debts nondischargeable under section 523(a)(2)(A)

involving construction contracts, when the debtor intentionally misrepresents a material

fact or qualification.  See, e.g., In re Clark, 330 B.R. 702, 707 (Bankr. C.D. Ill. 2005)

(finding that the debtor's false representation that he was a licensed and insured

contractor was sufficient to bring debt under the scope of section 523(a)(2)(A)); In re

Bozzano, 173 B.R. 990, 994 (Bankr. M.D.N.C. 1994), abrogated on other grounds by

Cohen v. de la Cruz, 523 U.S. 213 (1998), see also In re Fuselier, 211 B.R. 540, 545

(Bankr. W.D. La. 1997) (finding the debt nondischargeable under section 523(a)(2)(A)

because the debtor falsely represented to the creditors that he had a contractor's license

and did so with the intent to deceive them); In re McDaniel, 181 B.R. 883, 887 (Bankr.

S.D. Tx. 1994) (holding the debt not discharged because the debtor falsely represented

that he was an architect).

Directly relevant to this proceeding is In re Tapper, 123 B.R. 594 (Bankr.

N.D. Ill. 1991).  In Tapper, the bankruptcy court concluded that the claims against the

debtor based upon home contracting work were nondischargeable, because the debtor

misrepresented, inter alia, that he was in the business as an expert contractor for 20 years

18

and that he employed his own tradesmen, when in fact he was a mere salesman who hired

subcontractors.  Id. at 603.  In this adversary proceeding, the Stevenses have

demonstrated by a preponderance of the evidence that Mr. Antonious also made

knowingly false misrepresentations or created false pretenses which were justifiably

relied on to the detriment of the plaintiffs.

The evidence shows that Mr. Antonious provided the Stevenses with a

brochure that intentionally misstated or left the false impression that Your Small Job

Specialists was in the home construction business, had been so for 37 years, had 47

employees, was operated by Dennis Antonious, and was licensed and insured.  Ex. P-2.

Mr. Antonious also stipulated that he held himself out to the public as a general

contractor, Stipulation of Uncontested Fact, #10, thus undermining his testimony that he

informed the Stevenses of his true role and the limited nature of Your Small Job

Specialists.  None of these express or implied representations are true.  And the contract

signed by Mr. Stevens was designed to further the false impression that this substantial,

well-established concern would perform the home improvement project and stand behind

its work.

The Stevenses (and perhaps other homeowners, given the number of

lawsuits against him) relied upon this misinformation.  As the Tapper court observed:

> "[A]n intent to deceive may logically be inferred from a false
> representation which the debtor knows or should know will
> induce another [to act accordingly]." In re Kimzey, 761 F.2d
> 421, 425 (7th Cir.1985).  Debtor here knew or should have

19

> known that his misrepresentations would induce the
> Consumers to hire him, since in deciding whether to hire a
> contractor, a homeowner would naturally look to the
> contractor's qualifications; guarantees of work performed;
> assurances that the work would be completed in a satisfactory
> and timely manner; and whether the contractor and his crew
> were experienced for a reasonable length of time in the
> business together.  Furthermore, Debtor's use of a fictitious
> name in order to escape the consequences of his
> misrepresentations shows that Debtor intended to deceive his
> customers.

In re Tapper, 123 B.R. at 604.

Moreover, the Stevenses' reliance upon Mr. Antonious's express or implied

misrepresentations was justified.  Id., at 604.

Testimony revealed that the Stevenses solicited information from various

contractors before contracting with "Your Small Job Specialists."  N.T. at 9:40, 11:04.

Both Stevenses testified credibly that they relied on the advertisements provided to them

by Dennis Antonious.  They stated that had they known Dennis Antonious was solely a

broker of construction services, a middleman, they would not have engaged his services,

nor those of John Griffith, whom they believed to be working for Dennis Antonious.

N.T. at 9:53, 10:05.

Finally, to obtain relief under section 523(a)(2)(A), the creditor must

demonstrate that he suffered a loss or damage as a proximate consequence of the

representation having been made.  The Stevenses paid $53,800 to Mr. Antonious in

partial payments for the construction of the addition to their home.  The addition was not

properly constructed, never completed, and their payment was not returned to them.

There is sufficient evidence to support a finding that the plaintiffs' loss, however it is

quantified, was proximately caused by their reliance upon express and implied

misrepresentations made by the debtor, Mr. Dennis Antonious.

The debtors argue that any loss suffered by the plaintiffs is a result of the

sudden death of John Griffith and not by any misrepresentations made by Mr. Antonious.

This argument is unpersuasive.  Indeed, had the representations regarding Your Small Job

Specialists been true, the death of one individual would not have led to the cessation of

the work.  Other employees would have been available and competent to continue the

project.

Unbeknownst to the Stevenses, Mr. Antonious had left their home

construction project completely dependent upon the health and competency of Mr.

Griffith.  The plaintiffs never agreed to that.  They knew nothing about Mr. Griffith's

business, ITP Renovations, Inc.  Moreover, the Stevenses were unaware that virtually all

of the funds they paid to Mr. Antonious were transferred to Mr. Griffith and so were

unavailable for use on their project when he died.

For these reasons, the plaintiffs have proven by a preponderance of the

evidence that Mr. Dennis Antonious individually and as the operator of "Your Small Job

Specialists" knowingly misrepresented himself and the nature of his business to the

plaintiffs, and any debt arising from his misrepresentations is not discharged under

section 523(a)(2)(A) of the Bankruptcy Code.

IV.

As a general rule, fraudulent practices of one spouse are not automatically

imputed to the other spouse for purposes of nondischargeability under 11 U.S.C. §

523(a)(2)(A).  In re Carp, 340 F.3d 15, 26 (1st Cir. 2003); see In re Tsurukawa, 258 B.R.

192, 198 (B.A.P. 9th Cir. 2000) (holding that "a marital union alone, without a finding of

a partnership or other agency relationship between spouses, cannot serve as a basis for

imputing fraud from one spouse to the other").  Rather, decisions that have attributed the

wrongdoing of a party to a debtor-spouse have done so based upon agency theory.

Tsurukawa, 258 B.R. at 198; see, e.g., In re Lansford, 822 F.2d 902, 904-05 (9th Cir.

1987).  The existence of a marital relationship alone does not establish an agency

relationship.  See Carp, 340 F.3d at 26 (finding that a marriage of 30 years and past joint

real estate ventures did not establish an agency relationship between a husband and wife).

Fraud also can be imputed to an innocent debtor-spouse if there is a

partnership relationship.  See In re Copeland, 291 B.R. 740 (Bankr. E.D. Tenn. 2003). "A

partnership [must be] implied . . . while completely ignoring the parties' social

relationship." Id. at 769.  When determining whether a partnership exists, courts consider

the totality of the circumstances and generally find partnerships "where it appears that the

individuals involved have entered into a business relationship for profit, combining their

property, labor, skill, experience, or money." Id. at 770 (quoting Pettes v. Yukon, 912

S.W.2d 709, 715 (Tenn. Ct. App. 1995).

Where a partnership or agency relationship is established, some courts have

held the principal or partner liable for the fraud of the agent or partner under section

523(a)(2), even without knowledge of the wrongdoing, so long as the wrongdoing was

within the scope of the agency or partnership.  See, e.g., Matter of Luce, 960 F.2d 1277,

1282-83 (5th Cir. 1992); In re Baines, 337 B.R. 392, 407 (Bankr. D.N.M. 2006):

> [F]raud pursuant to 11 U.S.C. § 523(a)(2)(A) can be imputed
> between spouses based on agency principles when there is
> evidence that the "innocent" spouse was involved in a
> business relationship with the "wrongdoing" spouse that gave
> rise to the debt. See In re Tsurukawa, 287 B.R. 515, 527 (9th
> Cir. BAP 2002) ("In order to impute fraud to a spouse, there
> must be a 'partnership or other agency relationship.'")
> (quoting In re Tsurukawa, 258 B.R. 192, 198 (9th Cir. BAP
> 2001)); In re Banke, 275 B.R. 317, 329 (Bankr. N.D. Iowa
> 2002) ("If a husband and wife are partners in a business,
> separate from the marital relationship, both may be held
> responsible for the fraudulent acts of one of them.") (citing
> Spence v. Tatum, 960 F.2d 65, 66 (8th Cir.1992) and
> Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co., 828
> F.2d 1245, 1249 (8th Cir. 1987)); First USA, Inc. v. Savage
> (In re Savage), 176 B.R. 614, 615-616 (Bankr. M.D. Fla.
> 1994) (noting that courts have imputed fraud from one spouse
> to another based on agency principles where the spouses were
> involved in some sort of business or partnership relationship
> in addition to their marital relationship) (citing In re Luce,
> 960 F.2d 1277 (5th Cir.1992) (per curiam), In re Paolino, 75
> B.R. 641 (Bankr. E.D. Pa.1987), and In re Walker, 726 F.2d
> 452 (8th Cir.1984)).  "Where there are no facts showing
> individual culpability on the part of an 'innocent' spouse,

fraud can still be imputed under partnership or agency
principles if that spouse is also a business partner of the
fraudulent spouse." Tsurukawa, 287 B.R. at 527
(paraphrasing In re Luce, 960 F.2d at 1284 n. 10).

I shall also assume that a spouse can be liable for the fraud or

misrepresentations of the other spouse, for purposes of section 523(a)(2)(A), if the spouse

knowingly aided and abetted in that fraud or misrepresentation.  See generally In re

Markarian, 228 B.R. 34, 40-41 (B.A.P. 1st Cir. 1998).

The evidence presented at trial does not demonstrate that it was more likely

than not that Mrs. Antonious was a partner or principal in Mr. Antonious' home

construction business.  Nor was there a preponderance of the evidence that Mrs.

Antonious knowingly aided and abetted her husband's false representations and false

pretenses.

The evidence reflected a partially estranged marital relationship between

Mr. and Mrs. Antonious.  They live in different parts of the same house and interact on

family matters, but not on business issues.  Mrs. Antonious appears ignorant about

deposits and withdrawals from her bank account, allowing Mr. Antonious to control their

finances and pay their bills.  She also permits Mr. Antonious to use a signature stamp to

endorse checks and deposit the proceeds into her account without her knowledge.  The

parties agree that Mrs. Antonious has never spoken to or communicated with the

Stevenses in any manner, and that she has not made any misrepresentations to them.

There was no evidence that she is familiar with her husband's advertisements for Your

24

Small Job Specialists.  And telephone calls for that business are not received in her

portion of the house.  Further, plaintiffs have failed to offer evidence that Mrs. Antonious

has any knowledge of her husband's business practices or any misrepresentations he

made.

      The fact that Mrs. Antonious permits her husband to use her bank account

does not render her his principal or business partner.  Nor would it, by itself, put her on

notice of any fraudulent conduct on his part as concerns the Stevenses.  The arrangement,

so far as was known to her, was made to prevent execution by the IRS.  Furthermore, her

acting as scrivener on one letter sent by her husband is also insufficient to place her on

notice of his misrepresentations.

      Given the evidentiary burden placed upon the plaintiffs, the evidence was

insufficient to impute Mr. Antonious' fraudulent misrepresentations to his wife, Mrs.

Peggy Antonious.


V.


      Plaintiffs' final contention is that defendants' actions, as described, fall

within the scope of 11 U.S.C. § 523(a)(6).  Section 523(a)(6) of the Bankruptcy Code

provides:

      A discharge under section 727, 1141, 1228(a), 1228(b), or
      1328(b) of this title does not discharge an individual debtor

25

from any debt—

(6) for willful and malicious injury by the debtor by another
entity or to the property of another entity.

A plaintiff must establish such nondischargeability by a preponderance of the evidence.

See, e.g., In re Keaty, 397 F.3d 264, 270 (5th Cir. 2005); In re Scarborough, 171 F.3d

638, 641 (8th Cir. 1999); see generally Grogan v. Garner, 498 U.S. 279, 291 (1991).

Prior to the enactment of the 1978 Bankruptcy Code, bankruptcy courts

found that a nondischargeable injury arose whenever the debtor's conduct was at least

reckless and was done without just cause.  Tinker v. Colwell, 193 U.S. 473, 487 (1904);

see In re Conte, 33 F.3d 303, 306 (3d Cir. 1994) (discussing pre-1978 case law).  Courts

have concluded, however, from the legislative history accompanying the 1978 legislation,

that Congress intended that section 523(a)(6) have a higher standard than just

recklessness.  In re Conte, 33 F.3d at 306; H.R. Rep. No. 595, 95th Cong., 2d Sess. 365

(1978) ("'[W]illful' means deliberate or intentional.  To the extent that Tinker v. Colwell,

. . . held that a looser standard is intended, and to the extent that other cases have relied on

Tinker to apply a 'reckless disregard' standard, they are overruled.").

Thus, the United States Supreme Court, in Kawaauhau v. Geiger, 523 U.S.

57 (1998), narrowly defined the phrase "willful and malicious" utilized in section

523(a)(6).  The Court construed section 523(a)(6) as limited in scope to intentional torts:

The word "willful" in (a)(6) modifies the word "injury,"
indicating that nondischargeability takes a deliberate or
intentional *injury*, not merely a deliberate or intentional *act*

26

that leads to injury.  Had Congress meant to exempt debts
resulting from unintentionally inflicted injuries, it might have
described instead "willful acts that cause injury."  Or,
Congress might have selected an additional word or words,
*i.e.*, "reckless" or "negligent," to modify "injury."  Moreover,
as the Eighth Circuit observed, the (a)(6) formulation triggers
in the lawyer's mind the category "intentional torts," as
distinguished from negligent or reckless torts.  Intentional
torts generally require that the actor intend "the *consequences*
of an act," not simply "the act itself."  Restatement (Second)
of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

Id. at 61-62; see also In re Markowitz, 190 F.3d 455, 464 (6th Cir. 1999).

Similarly, the Third Circuit Court of Appeals has observed:

[W]hen Congress required more than recklessness for
nondischargeability, it required that the debtor have engaged
in conduct more culpable than taking a deliberate action that
had a high probability of producing harm. . . . Rather, for the
injury to have been "willed" by the debtor, it must at least
have been substantially certain to result from the debtor's act.

In re Conte, 33 F.3d at 307;

Accordingly, "[a]n injury is willful and malicious under the Code only if the

actor purposefully inflicted the injury or acted with substantial certainty that injury would

result."  In re Conte, 33 F.3d at 305.  "We hold that actions are willful and malicious

within the meaning of § 523(a)(6) if they either have a purpose of producing injury or

have a substantial certainty of producing injury."  Id. at 307; see, e.g., In re Giarratano,

2004 WL 2827138, at *3 (D. Del. 2004).

Applying this standard, I easily conclude that the plaintiffs failed to prove

that the actions of Mrs. Antonious were willful and malicious.  While she permitted her

husband to use her bank account in operating his business, and while she handwrote a

letter sent to a customer that he dictated, such actions were not shown to have the purpose

of producing injury to the Stevenses, nor the substantial certainty of producing injury to

them.

I reach the same conclusion regarding the conduct of Mr. Antonious.

The evidentiary record does not demonstrate that it was more likely than not

that the misrepresentations made by Dennis Antonious, through his advertisements, were

made with the specific intent to injure the Stevenses.  Additionally, the evidence is

insufficient to find that the representations were made with substantial certainty of

injuring the Stevenses.  The evidence shows that Dennis Antonious created a false

impression and made misrepresentations to the plaintiffs in order to secure their business;

misrepresentations that ultimately may have caused the plaintiffs monetary damages.

There is no evidence, however, that Mr. Antonious believed that Mr.

Griffith was incompetent and unable to adequately complete the Stevens' home addition.

While the evidence in this proceeding reflects that Mr. Griffith performed negligently,

there is no evidence that his negligence was substantially certain to occur.  See In re

Devore, 282 B.R. 643, 645-46 (Bankr. S.D. Ohio 2002); see also In re Melcher, 319 B.R.

761, 776-77 (Bankr. D.D.C. 2004).  Negligent performance of a home repair contract falls

outside the scope of section 523(a)(6).  See In re Birt, 173 B.R. 346, 354 (Bankr. N.D.

Ohio 1994); In re Kaufmann, 57 B.R. 644, 647 (Bankr. E.D. Wisc. 1986).  Perhaps had

28

Mr. Griffith not died, construction of the plaintiffs' addition would have been completed

successfully regardless of the misrepresentations made by Mr. Antonious in order to

secure plaintiffs' business.  Compare In re Clark, 330 B.R. 702, 707-08 (Bankr. C.D. Ill.

2005) (where unlicensed debtor/contractor took payment from homeowner promising to

use the funds to purchase materials, and had no intention to do so, the conduct was willful

and malicious).  Under such circumstances, Mr. Antonious' actions do not rise to the

level of willful and malicious injury under section 523(a)(6).


## VI.


        In summary, after considering the testimony and all of the evidence,

I conclude that the plaintiffs have demonstrated by a preponderance of the evidence that

debtor Dennis Antonious made knowing and intentional misrepresentations about his

qualifications, created a false impression, and failed to disclose material facts relating to

the nature of his business and its relationship with John Griffith, in order to procure the

Stevenses' home repair business.  Any debt arising from this conduct is excepted from the

scope of the chapter 7 discharge, pursuant to 11 U.S.C. § 523(a)(2)(A).  I find, however,

that plaintiffs have not proven by a preponderance of the evidence that Peggy Antonious

knew of and took part in her husband's fraudulent business conduct, or acted as his

principal or partner. Any debt arising under these circumstances, as it pertains to Peggy

Antonious, is discharged.  Further, I find that the plaintiffs have not proven by a preponderance of the evidence that either debtor acted wilfully and maliciously to cause the plaintiffs injury under 11 U.S.C. § 523(a)(6).

   An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 7

DENNIS ANTONIOUS and                     :
PEGGY ANTONIOUS
                    Debtors               :    Bankruptcy No. 05-18809
_____

BRYON STEVENS and
MAYOLIA STEVENS,                         :

          Plaintiffs                      :

     v.                                   :

DENNIS ANTONIOUS and                     :
PEGGY ANTONIOUS
                    Defendants            :    Adversary No. 05-575
_____


.................................................

ORDER

.................................................

AND NOW this 27th day of November 2006, for the reasons stated

in the accompanying opinion, it is hereby ordered that judgment is entered in favor of the

plaintiffs against defendant Dennis Antonious on their claim under 11 U.S.C. §

523(a)(2)(A), but judgment is entered against the plaintiffs and in favor of Mr. Antonious

on their claim under 11 U.S.C. § 523(a)(6).

Any debt held by the plaintiffs against Mr. Antonious is nondischargeable.

It is further ordered that judgment is entered in favor of defendant Peggy

Antonious and against plaintiffs on their nondischargeability claims under 11 U.S.C. §

523(a)(2)(A) and (a)(6).

_____

BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Bryon K. Stevens
Mrs. Mayolia L. Stevens
419 Harry Road
Coatesville, PA 19320

Jonathan P Boughrum, Esq.
Crawford, Wilson & Ryan, LLC
220 West Gay Street
West Chester, PA 19380

Mr. Dennis Dryden Antonious
Mrs. Peggy A. Antonious
124 Hedgerow Lane
West Chester, PA 19380

Mark Blank Jr., Esq.
50 Darby Road
Paoli, PA 19301